Please the court. My name is Chet Cronenberg and I represent the appellants. Tens of millions of dollars are at stake in an MDL proceeding in Ohio concerning whether ACE may rescind a contract called the Citibank policy under which ACE guaranteed to my clients payments due under certain equipment leases that the debtors sold to non-debtor lease funding. Now in this separate bankruptcy case, the debtors filed an adversary proceeding seeking to recover fees paid to ACE with respect to the Citibank policy and other contracts in the event ACE is successful in rescinding the Citibank policy and other contracts in the MDL proceeding. Ultimately a settlement was reached in which ACE agreed to pay $150,000 to the debtors. How soon do you think we're going to hear the final decision out of the other litigation? Well, the district court opinion came out in favor of my clients. But then there was a Sixth Circuit appeal. An oral argument was heard on September 10, 2007. And I can't say when there will be a decision. Is the Sixth Circuit fairly speedy or can we expect it pretty soon? I can't draw any conclusions. But one thing I can say that if the Sixth Circuit opinion comes out in my clients' favor, again, if there's an affirmance, certainly what we're worried about disappears to a large degree, absence, cert petition and all that. But as this panel knows, appellate courts sometimes reverse district court opinions, particularly motions to dismiss at the pleading stage. So if this court would like to wait to issue its decision until after the Sixth Circuit rule. Let me ask this. Is there anything about the Sixth Circuit's decision other than a reversal, period, that would affect the disposition in this case? I didn't say that very clearly. I understand what you're saying. You know, it's hard to tell. It's hard to predict and speculate what the Sixth Circuit may do. Certainly if there's a reversal, it's a major problem. This settlement agreement becomes a major problem for our clients. Tell me what the major problem is. Our client has no objection to the settlement itself. And we don't care about Ace having paid the debtors $150,000. But Ace put into the settlement agreement a provision that calls for rescission of the Citibank policy as to the debtors. And that's an excerpt of record page 303. And what we're concerned about is in the MDL proceeding, Ace is arguing that rescission as to one party to a contract automatically means rescission as to all parties to the contract. And that's very important. And that's in the excerpt of record page 368 and 369. Do you think that's good law? No. I think that we'd prevail on that argument. However, it is an argument we would have to address. And I'm not the judge. Just because I think that it's a weak argument, it doesn't mean that we would prevail. And we're certainly prejudiced by having to address an argument which may or may not be successful. And are the debtors parties to the Citibank policy? Or is there an arguable basis for believing that they might at some time be thought to have been? It's our position that the debtors have no possible interest in the Citibank policy. Well, I didn't ask that. I said, are they a party to the Citibank policy? No. No. Is there any arguable basis upon which they could be? No. Well, if that's so, then how is there anything other than a purely remote, highly speculative basis upon which A.C.E. They call themselves A.C.E. or ace. Ace. Ace. Can make the argument that concerns you. That is, that a rescission as to a party rescinds as to all parties. A.C.E.'s counsel is contending in the MDL proceeding that the debtors do our parties to the Citibank policy. And here's what A.C.E.'s counsel told the MDL court. They said, we do contend in the MDL litigation that that entity is an alter ego of CMC. But that's an issue that gets resolved there, not here. And if A.C.E. were successful in its argument in showing that the debtors did have an interest, were a party to the Citibank policy because an affiliate has an interest in the Citibank policy, according to them, under that scenario, and if the settlement agreement arguably stands, that the policy has been rescinded as to the debtor, then A.C.E. would have the argument to make that rescission of the policies to the debtors means rescission is to all parties, of which my client, J.P. Morgan Chase, is trustee for Citibank, has tens of millions of dollars of interest. And one thing we're concerned about here is the settlement agreement by its own terms says that it's admissible to carry forward the actions contemplated, including but not limited to rescission of the policies, and that the agreement may be submitted to the MDL court for that purpose. Well, I mean, I suppose it could say that you could fly to the moon this afternoon. I mean, it doesn't mean that you can or that somebody's going to give you the vehicle to do it. I mean, if you brought that into the court, doesn't the MDL court have to decide whether it's admissible and for what purpose? Well, I think in some ways it's putting the cart before the horse, because the first question is whether the bankruptcy court had jurisdiction to issue a ruling affecting non-estate property. And it's our position that Well, but how could it issue an admissibility ruling that would in any way, shape, or form tie the hands of a federal district court in Cincinnati? The bankruptcy court didn't issue an admissibility ruling. The bankruptcy court approved the settlement, allowing language that had the rescission word in it. And that's what troubles us. And I'm not – the question about the admissibility question is the settlement – it's more the intentions of the parties. The settlement agreement says that the parties may seek to use the settlement agreement in the MDL court to prejudice my clients, essentially. Well, it doesn't say to prejudice your clients, does it? To try to seek rescission of the city bank policy, which would prejudice my client, if they're successful. And I don't think that this is speculative. When you look at the briefs submitted by – you know, it's only speculative if the Sixth Circuit doesn't reverse. But when you look – If the Sixth Circuit affirms, then are you satisfied with a decision in this court affirming? If the Sixth Circuit affirms and there's no chance of – assert to the U.S. Supreme Court, we're pretty – it doesn't matter anymore what the bankruptcy court ruled. That's correct. Because in that case, what we're concerned about is being prejudiced in the MDL doesn't matter anymore because we will have won. And that's 100 percent true. But here's what I'm worried about. And here's why I said you have to put the – you have to be careful about putting the cart ahead of the horse. Because jurisdiction is fundamentally important here. And what we argued below was that the bankruptcy court lacked jurisdiction to approve the settlement agreement because the city bank policy was not a state property. And the bankruptcy court and the district court didn't really take issue with the principles of law we cited, which were that a bankruptcy court doesn't have jurisdiction over non-estate property and that debtors can't use non-estate assets. Let me ask you this. If this court affirmed on the same basic footing as the district court, that is that the settlement agreement's language in terms is limited to the interests, if any, of the debtors, in Cincinnati, if from your point of view, worse comes to worse, and you're back in front of the district court, would you then be able to argue, look, the settlement agreement only affects – only could affect the interests of the debtors, whatever they are. The bankruptcy court lacked jurisdiction to deal with our property, which wasn't at issue there. Only the debtors' interest was. Are you precluded from making that argument in federal district court? No. We can make whatever arguments we can try to make in district court. But the problem with that, if there were just mutual releases here, then who cares? It could happen in every settlement agreement. Parties mutually release their claims against each other. But here, they didn't just approve the settlement. They included the rescissionist to the debtors' language. So let's say that Ace is successful in the MDL court by saying – by arguing that they do have an interest in the city bank policy, some sort of interest, then we have that rescission problem to deal with. And the U.S. Supreme Court has said in the Steele case that jurisdiction is inflexible and without jurisdiction. And that's the real problem here. And, you know, you ask early on, you know, what's sort of – you know, isn't there a possibility that the debtors could have an interest in the city bank policy? And the answer to that is no. Because early on in this case – and this is very important – early on in this case, the bankruptcy court started in Florida and later it was transferred to California. And JPMorgan Chase, my client, made a motion for determination of ownership of certain leases. And the parties ultimately entered into a stipulation. And in that stipulation, the debtors and my clients agreed on a stipulation, which was so ordered by the bankruptcy court, which said that the debtors have no right, title, or interest in certain leases, which was defined to include the city bank policy. And it's completely inappropriate for the trustee to enter into a settlement of whatever rights the debtors may have in a property when the debtors have already stipulated and it was so ordered by the bankruptcy court that they have no rights in the property. And I want to walk through that stipulation order slowly, because Ace argued in its papers that the stipulation applied just to certain leases attached to Exhibit A and not to the credit insurance guaranteeing payment over leases. But when my client made its motion – and this is on the excerpt of record, page 72 to 75 – JPMorgan Chase talked about what ownership of leases meant. And it made it very clear that it's not just the leases themselves, but it's also the credit insurance guaranteeing payment for those leases. And in the stipulation – well, the word leases in the stipulation is a capital L. And in the stipulation it says where terms are not defined in the stipulation, you look for the definition in the sale and service agreement. And this is on excerpt of record, page 91. And then if you go to the sale and service agreement, page 17 to 19, leases is defined to include not just the leases themselves, but also the credit insurance guaranteeing payment over the leases. And I apologize for belaboring this, but I think it's important because we're dead right on this, that the debtors did sign a stipulation which was so ordered by the bankruptcy court that the debtors have no rights in the policy. And the import of this stipulation is that the debtors have no interest in the Citibank policy. Therefore, under no circumstances should they have agreed to a settlement affecting whatever rights they have in a contract, which could only prejudice our client. Secondly, the Citibank policy itself is clear on its face that the debtors have no interest in the policy. The insured is a company called Lease Funding, which is not the debtor and was not substantively consolidated with the debtors. And the lost payee additional insured is J.P. Morgan Chase, his trustee, not the debtors. Now ACES makes inclusory allegations that the debtors are alter egos of lease funding, but no evidence was presented on that before the bankruptcy court. As I said before, ACES counsel argued that the MDL court gets to hear that question. But even if we put aside the prior stipulation in order in which the debtors agreed that they have no right, title, or interest in the leases, which is defined to include the Citibank policy, and even if we just adopt, for sake of argument, ACES' argument that the debtors are alter egos of lease funding, so what? The debtors still have no interest in the Citibank policy because debtors have no interest in a contract where one non-debtor, in this case ACE, guarantees a beneficiary, in this case Citibank, that the non-debtor will pay even if the debtor can't pay. The amount owed due to the beneficiary. And this happens all the time in the letter of credit situation, where a bank guarantees payment to the beneficiary even if the bank's customer can't pay. And under such a scenario, and we cited many cases on this principle, the courts have held that the letter of credit and the letter of credit proceeds are the beneficiary's property, not the debtor's property. And the letter of credit here is analogous to the surety contract because in both cases, one non-debtor guarantees payment to a beneficiary, where such rights are completely independent of what rights and obligations the debtor may have to the beneficiary. And if there's any doubt about the analogy between a letter of credit and the surety contract here, all you have to do is look to the MDL decision on page 11, where the court held that the transaction documents make clear that, at least in the case of the Chase Citibank policy, the parties never contemplated that CMC would receive any of the proceeds of the transaction. Under these circumstances, there can be no question that Chase was intended to be the obligee and that Illinois Union owed its obligations to Chase. Two other points, because I want to reserve some time. In addition to lack of jurisdiction, even if you put aside the jurisdictional point, the bankruptcy court erred in approving a settlement that allowed the bankruptcy trustee to use non-estate assets for ACE to obtain a more, or the debtors to obtain a more favorable settlement. In the In re Walsh construction case, the court held that a bankruptcy settlement cannot use property or rights belonging to a non-settling party in order to reach a more favorable settlement for the settling party. In addition, the bankruptcy court erred by refusing to add language to the approval order to ensure that Citibank's rights were protected. The bankruptcy court said to the parties, go out and try to reach an agreement on an order. Well, let me ask you this. If we affirmed on the basis that we construed the bankruptcy court action as not affecting your interests, would that solve your problem? I'd like the bankruptcy court to do that. We want some language. I think it could cause a problem because you're still approving the settlement agreement. But we're also construing the settlement agreement. I think if this court made very, very clear that the rescission language in the settlement agreement is void, I think that that would. Well, not as void, but doesn't do what you are afraid it does. I would want the court to strike that language, or this court to strike that language, and here's why. The settlement agreement contains language which says that if any term of the settlement agreement is declared invalid, then the remainder of the settlement agreement remains fully valid and enforceable. And we have no problem with the settlement agreement as a whole, just that one language, just the rescission language. And we would want that language declared in some words or shape or form declared invalid. That would help us along the way. Did you people go to mediation on this? No. The bankruptcy court asked the parties to meet and confer. Well, we have our own mediation staff. Did they contact you? I think they did. They did. And we asked each other whether we could reach an agreement on this, and we couldn't. And all we wanted was to get rid of that rescission language. I understand what you want. Yes. Whether you can get it or not is another issue. That's true. So if you want to save time, you've got three minutes left. Why don't I reserve some time? All right. Good morning, Your Honors. I'm Jesse Finlayson. I represent Richard Kipperman, the bankruptcy trustee for Commercial Money Center and Commercial Servicing Corporation. Co-appellee in this matter, I'm going to divide my time with Gene Nogas, who's counsel for ACE and Illinois Union. Why is this clause so important to you? It wasn't important to the trustee, Your Honor. It was a condition to the settlement imposed by ACE and Illinois Union. It was negotiated in agreement, and as a condition to signing the agreement, ACE and Illinois Union wanted to make clear that at least as to whatever speculative rights the debtors might hold that the debtors had stipulated. The trustee on behalf of the debtors had stipulated to rescission. And let me clarify that point quickly before I get into the overall picture. I think that the appellant's counsel has overstated what transpired at the bankruptcy court. They've argued that the bankruptcy court adjudicated the rights of a non-debtor party or that the settlement agreement itself purports to effectuate a rescission of the insurance policy at issue. None of that's accurate. The settlement agreement itself simply indicates that the trustee on behalf of the debtors has stipulated to rescission and release of the agreement. Provided that stipulation only relates to the debtors' interest, if any. The agreement itself doesn't purport to effect a rescission. It doesn't say that the policy is hereby rescinded. It simply confirms in writing the trustee's agreement on behalf of the debtors. From the point of view of the trustee, if I heard you correctly, you couldn't care less about the rescission language. Not except that it was a condition. No, you wanted $150,000. I mean, I understand that or whatever you could get. But beyond the money going into the pot, the trustee doesn't have any interest in the rescission language. Not at all, Your Honor. We don't claim an interest in the policy. We've never claimed an interest in the policy. The issues in the MDL Court are immensely complex, and Mr. Nogas can explain their concerns. We felt this is a fairly typical occurrence where the bankruptcy trustee is administering an asset, where there is at least a question as to title or the estate's rights, and it is absolutely routine for a bankruptcy trustee at the behest of another party to agree to waive the estate's interest, if any, simply to clarify that the estate's no longer implicated. And that's all we felt we were doing here. That's all the language of the agreement provides. And from your point of view, you don't even purport to have any interest. We don't, Your Honor. Okay. And the agreement was simply intended to clarify that to the extent there was any consent needed by the trustee to effect a rescission, that consent had been granted. We don't purport to have the power to rescind the policy.  And frankly, the bankruptcy court didn't attempt to rescind the policy. Actually, that brings me to the point I was going to make initially, which is it's clear. I think it's important to keep in mind what actually happened here and what didn't happen. When the bankruptcy case was filed, there was a pending lawsuit against the debtors. At that point, my client as the trustee was obligated to defend that case on behalf of the debtors. My client subsequently filed a lawsuit against ACE and Illinois Union in the bankruptcy court, seeking to recover amounts paid to them prior to bankruptcy. Through negotiations, the parties entered into a settlement agreement. That's all that happened. But for the fact that my client is a bankruptcy trustee, that would be the end of the story. There would be a private settlement agreement. It has whatever legal effect it has. If my client has no interest in these policies, so be it. There is an administrative rule in the bankruptcy court that requires a bankruptcy trustee to get approval of a settlement by the bankruptcy court. The purpose of that rule is so that the court can make sure the trustee is doing his job and exercising his reasonable business judgment. The focus of the inquiry when looking at approval of a bankruptcy settlement is whether or not the trustee exercises reasonable judgment, whether it's in the interest of creditors. The bankruptcy court isn't supposed to adjudicate the underlying issues, isn't supposed to conduct a mini-trial. It's simply supposed to canvas the issues and decide whether what the trustee decided to do makes sense from the creditor's perspective. And that's all Judge Hargrove did here. And unfortunately, because of the contentious nature of the MDL proceeding, and because by definition anything that ACE and Illinois Union agreed to must be bad for Citibank under some speculative theory, ACE and Illinois Union hijacked that process to come in and argue that it should be able to rewrite a private settlement agreement entered into by the trustee and ACE and Illinois Union. And to some success, we actually went back and modified the settlement agreement to try and clarify that we're simply stating that if we have an interest, we've consented to the rescission, we don't purport to effect a rescission, and that we waive whatever rights we may have in an attempt to try and address Citibank's concerns. And unfortunately, what we were met with was some of what we've seen here today in court, which is that's not good enough, I want you to actually change the terms of the agreement, I want you to strike certain language. Simply put, Citibank has no right to come in and use the bankruptcy court approval process. Well, on the other hand, the bankruptcy court has no right to be a roving, you know, let's clean up all possible conceivable problems out there in the rest of the world in which the debtors themselves claim they have no interest. I think that's true. In an ironic way, though, what the appellants are arguing the court should have done is precisely what the cases they've cited say the court can't do. The court can't go in and adjudicate the rights in order to decide whether the estate... an effort to affect litigation that's not pending before the court. I think Mr. Nogas can explain in more detail why they felt that clause was necessary. Maybe better. And I'll end with this then. As I understand it, ACE Illinois Union has never suggested, they never suggested to us during the negotiations and clarified to the bankruptcy court on the record, that an agreement by a party to rescind an insurance policy affects rescission as to all parties. What I think they have argued is that if a policy is procured by fraud of one party and there's a judicial determination that there was fraud in the inception of the policy, that that fraud gives right to rescission of the policy as to all insurers. Nobody has argued that the trustee's agreement to rescind the policy on behalf of the estate, if they have any rights, affects rescission as to all parties. That's simply not the argument. And after the settlement was approved, the issue was litigated in the MDL court in Citibank's favor, and ACE Illinois Union never raised this phantom argument. The matter is now up on appeal before the Sixth Circuit, and ACE Illinois Union has never argued this issue. That's not their position. It completely turns the argument on its head. Their argument has been that the debtors committed fraud, that because of the debtors' fraud, they have a right to rescind the policy. They've lost on that issue. They've never argued, and to my knowledge will never argue, that the trustee's agreement to rescission, as opposed to the debtors' fraud, constitutes a grounders in the policy as to all parties. That's simply not the argument. Well, given the concession by Citibank, that it doesn't care at all about the settlement or about the $150,000, what's your interest in this position now? Because ACE Illinois Union... Why are you arguing? ACE Illinois Union, and this is my last point... No, I mean, I'm not being pejorative. I'm just asking a serious question. I mean, if the settlement stays alive and if you still get your $150,000, what do you care? This is also an issue Mr. Nogos will address to some extent, but they've taken the position that this language provides a material protection for them against a potential argument by Citibank in the MDL. That's still not my question. My question is specifically to you as the trustee of the bankruptcy estate. Never mind what ACE wants. If the settlement stays alive and if you are not in jeopardy of losing your $150,000, what's your interest? None. You just think that if the rescission word is excised, that it will bust the settlement? Is that what you're saying? ACE Illinois Union have taken that position, and our concern is... And that's your concern. That's your interest. Exactly. If the court by judicial fiat were to come in and start rewriting the contract, ACE Illinois Union have said, that's not our deal, and we're back to square one. And we're back to having two lawsuits that we have to deal with before we can wrap this bankruptcy case up. We have to refund the money, assuming we have it. I think we do at this point. This bankruptcy has been pending for nearly five years. There are, to my knowledge, two outstanding issues stopping us from closing this bankruptcy case. And if this settlement is put in jeopardy, and we have to go back to square one with ACE Illinois Union, it materially prejudices my client. Thank you, Your Honor. Good morning, Your Honor. Gene Nogas on behalf of Illinois Union Insurance Company and ACE American Insurance Company. Mr. Nogas, what did you think you were getting for your $150,000? We thought we were getting the trustee's consent on behalf of CMC, Commercial Money Center, and CSC, the two debtors, to rescission. And let me tell you why that was important. To rescission of what? Of all of the insurance policies that had been issued jointly to either CMC or CSC or a subsidiary in one case, CMC lease funding, and to each of the banks that were parties against us in the MDL proceeding. We're talking about over a dozen policies here. This settlement didn't just resolve what goes on with the Citibank policy. And with respect to every policy other than the Citibank policy, the named insured was Commercial Money Centers, one of the debtors. What we were concerned about in the MDL proceedings is that we have a claim for rescission in the MDL proceedings that originally was asserted against CMC and CSC along with each of the banks. Partway through that process, CMC and CSC filed for bankruptcy. We needed to amend our complaint, and the MDL court did not allow us to name CMC and CSC as parties to our, it's actually a counterclaim, for rescission based on fraud. So we were forced to name only the banks, and our concern was the law is that if you have grounds, not an agreement, if you have grounds for rescission as to one party, you get rescission as to all parties. Our concern was in the absence of CMC and CSC in the litigation where we were adjudicating that issue, that the court might take the position that it did not have power to rescind the policies. So we just wanted to close the books by getting CMC's and CSC's agreement to any rescission so we didn't have to worry about that issue. We have never taken the position that this agreement affects the rescission as to anyone else, and that has never been our position in the MDL. Mr. Finlayson correctly stated our position in the MDL. If we prove fraud in the inducement, the so-called innocent co-insured defense doesn't work. We're entitled under California law to rescission as to all parties, if we're entitled to rescission as to any party. But that doesn't mean that if you get an agreement from one party, that it's binding on somebody who's not a party to that agreement, and we've never taken that position, Your Honor. Now with respect to whether CMC or the debtors might have an interest in these policies, we were concerned that they might have an interest in these policies because this stipulation that Mr. Cronenberg continually refers to has a provision that he hasn't told the Court about. And what that provision says is that all parties, including the trustee, on behalf of the debtors' estate and JPMC, which is Chase Bank, retain their respective right to receive any payments due to such party under the transaction documents, which is expressly defined to include our policies, including recorded subservice or advances due to the debtors, claims that CMC and CSC have asserted against us in the MDL proceedings, in which we got eliminated as part of this settlement, such payments to be made only in the order and priority set forth in the transaction documents. The right of the trustee includes the right to assert an interest in the leases derivatively through its equity ownership, if any, in lease funding. So the trustee, back at the time that this stipulation was entered, and I believe it was 2003 in Florida, was taking the position that it might have an equitable claim to whatever it was lease funding was entitled to under these policies. So we were concerned about that as well. We took care of that with this settlement. And it is a material part of what we're doing with this settlement. And frankly, if it were stricken, we did tell both the bankruptcy court and the district court that we viewed that as a material term, and it would remake the settlement to strike that. But we went out of our way in the agreement, and in amendment to the agreement, as Mr. Finlayson pointed out, to make it clear that the trustee was only agreeing to rescission to the extent that he had any rights, and was only agreeing to release whatever rights he had, and he was making no representations as to what those rights were. We understood that we might be buying nothing here, that somebody else might own all of the rights, but we weren't willing to take a chance of continuing to go through this MDL litigation, which has cost my client millions of dollars, with the hope that someday at the end that we might win, but then only have to fight the battle again. The other part of this, Your Honor, is that Citibank has argued that we might make some argument. We've never made the argument. We don't intend to make the argument that they contend we might make. It really is kind of a fanciful concern. It's not a concrete concern. It's not anything that is a real prejudice. And really what they've asked this court for is an advisory opinion as to whether that argument, which we've never made, might be a valid argument. Well, you know, the difficulty I have with understanding why you're all here is if they're concerned that you're going to make an argument that you're not going to make, why isn't it possible for you two to agree that you're not going to make the argument and their concern is there's no reason for it? And wouldn't that solve the whole problem? Well, Your Honor, I thought we had done that on the record in the bankruptcy court where I stated the very thing I've told you today, that we haven't made that argument. We don't intend to make that argument. We don't think that argument would succeed. And the bankruptcy court noted, well, you'd be a stop from making that argument now, wouldn't you, Counsel? And I said, yes, Your Honor, I believe we would be a stop from making that argument. I don't think we need to do more than that. We certainly don't have to rewrite an agreement, particularly when we're concerned about an argument that Citibank might make here. And that's what our real concern is, that Citibank will come back at the end of the day and say, CMC's not here. They have the equitable interest in this policy and you can't get rescission as to them because they are not here. Even though you've proved that you have a right to rescission, they are not here. We've eliminated that possibility of some procedural roadblock that Citibank will put up to us down the road. Now, all that assumes that the Sixth Circuit reverses and that we get back into the district court because, as everybody's noted, if the Sixth Circuit affirms, then none of this is worth the time we've taken today. But if there are no other questions, I have nothing more to add. Thank you, Counsel. Thank you. Oh, pardon me, Your Honor. Can I give the Court a cite to the record that I read on the stipulation so that the Court can find it suit or choose to? It's page 94 of the excerpts of records, that provision of the stipulation that I quoted. Thank you. Sorry, thank you. Just four quick points. Number one, the Trustees' Counsel said the trustees never claimed any interest in the policy. That's a critical admission because, in our view, that's the end of jurisdiction because the Bankruptcy Court can't be approving a settlement in which the debtors have no interest in the property, which they essentially conceded. And secondly, even if there is somehow jurisdiction, a Bankruptcy Court can't use non-estate assets. Let me ask you the same question I asked your opposing counsel. Your concern was that they're going to make an argument. He says they're not going to make the argument. He's willing. He's made that representation in the Bankruptcy Court. He's acknowledged that he's a stop for making the argument. Can't you two enter into a two-sentence agreement? We tried. I wish. The Bankruptcy Court said that ACE should be a stop for making that type of argument. ACE didn't say that. In fact, if you look at the excerpt of record at page 289 to 290, in the order that we wanted the Bankruptcy Court to adopt, we wanted language saying that there's a stop based on the prior statements of the Bankruptcy Counsel. We wanted language striking the rescission language or language making clear that, and I'm quoting, the settlement agreement does not affect rescission of the policies as against the banks. ACE wouldn't agree to that language, and that's why we're here today. We always thought we should have been able to reach an agreement on this, but we can't. When it comes down to putting something on paper to make sure we're protected, that just wouldn't happen. And ACE's counsel never has explained why mutual releases aren't good enough. In virtually all settlement agreements, you just mutually release claims against each other. Why shouldn't that protect ACE? And there's been no explanation of why the releases are not sufficient. Finally, Well, ACE says that if it can establish fraud, it doesn't want to release you. They can argue whatever they want in the MDL court. All they're saying is that the bankruptcy documents don't, what the bankruptcy court does, doesn't release you. Doesn't release who? Did you say you? I'm sorry. You, yes. He doesn't want to release. I just don't understand ACE's argument. I mean, ACE can argue whatever it wants in the MDL proceeding. It can argue fraud by lease funding who's insured under the policy means that the contract can be void of an issue. They can make that argument. They tried before and they lost. They can still make that argument. When the MDL court ruled against them, it didn't say that they were stopped from making any arguments. That wasn't an issue before the court. This is very simple. All we have is this rescission language. The court had no right as a jurisdictional matter to include that rescission language. I want to address one other question raised by the trustees council, which is that this is a phantom argument because ACE never made this argument in the MDL so far, which is a fair question. But there's an easy answer to that question. The answer is one of timing. The MDL briefing was already fully done by the time the bankruptcy court issued its order approving the settlement agreement, number one. Number two, the appeal to the district court of the bankruptcy court's decision was not resolved until after the MDL court issued its decision. So there's a problem with timing. So to say that we're not worried about whatever arguments ACE might make, we are very worried about what ACE might make, and we're particularly worried because this goes back to the original question from the panel, is when we try to negotiate language that provides the protection we wanted, we couldn't get it. And that's why we're here, and all we want to do is strike the rescission language. We don't care about the settlement. We don't care about the mutual releases in the settlement, and we don't care about the $150,000. I want to thank the panel very much for their time. Thank you. The case just argued is submitted. Next case for oral argument. Jim Corp versus Kedona. Thank you.
judges: Fletcher, Reinhardt, Rymer